[Cite as *In re T.H.C.*, 2023-Ohio-687.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: T.H.C. AND S.H.H.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case Nos. 2022 AP 09 0031 &
2022 AP 09 0032

O P I N I O N

CHARACTER OF PROCEEDINGS: Appeal from the Tuscarawas County Court of Common Pleas, Juvenile Division, Case No. 21 JN 00001

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 3, 2023

APPEARANCES:

For Appellee

LISA VITALE ARNOLD
Tuscarawas County Job &
Family Services
389 – 16th Street, S.W.
New Philadelphia, Ohio 44663

For Appellant B.H.C.

LISA CALDWELL
203 Fair Avenue, N.E.
New Philadelphia, Ohio 44663

Guardian ad Litem

DONOVAN R. HILL
122 Market Avenue, N.
Canton, Ohio 44702

For Appellee M.H.P.

NICHOLAS A. DOUGHTY
401 Tuscarawas Street, W., Suite #201
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1}    In Tuscarawas App. Nos. 2022 AP 09 0031 and 2022 AP 09 0032, appellant B.H.C. ("Mother") appeals the September 3, 2022 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her two minor child ("Child 1" and "Child 2," individually; "the Children", collectively) and granted permanent custody of the Children to appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE CASE AND FACTS

{¶2}    Mother and M.H.P. ("Father") are the biological parents of the Children.[1] Following a shelter care hearing on January 6, 2021, the trial court issued an emergency order of removal of the Children and placed them in the temporary custody of TCJFS. The following day, January 7, 2021, TCJFS filed a complaint, alleging the Children were neglected and dependent.  The trial court appointed Attorney Donovan Hill as Guardian ad Litem ("GAL").

{¶3}    The complaint set forth the following particulars.  TCJFS has a history with the family.  In October, 2018, the Children were placed in the temporary custody of TCJFS due to concerns about domestic violence between Parents, Mother's untreated mental health issues, Father's alcohol issues, and a cockroach infestation in the home.  The Children were ultimately returned to Mother and Father and the case was closed in September, 2019.  TCJFS was involved with the family again from August, 2020, to October, 2020, due to reported concerns about Mother's ability to care for the Children.

---

[1] Father is not a party to this Appeal.

During the investigation, TCJFS learned Mother and Father were drinking excessively and a verbal altercation ensued during which Mother stated, in front of the Children, she and the Children were going to die together. Mother is schizophrenic and spent a few days in a psychiatric hospital to stabilize. TCJFS received concerns on January 5, 2021, regarding domestic violence and excessive drinking. Police were called to the home on January 3, 202, after Parents were involved in a physical altercation during which the Children were present. Father was intoxicated when police arrived. Mother had bruises on her body. Father admitted hiding Mother's medication for her schizophrenia. Further, the home was under investigation due to the cockroach infestation.

{¶4} Following an adjudicatory hearing on February 4, 2021, the trial court found Child 1 and Child 2 to be neglected and dependent. The trial court held a dispositional hearing on March 3, 2021, and ordered the Children remain in the temporary custody of TCJFS. The trial court conducted review hearings on April 19, June 28, and October 4, 2021, and January 4, and March 28, 2022, and maintained the status quo. On March 24, 2022, TCJFS filed a motion to modify prior disposition to permanent custody. The GAL filed a final guardian report on August 23, 2022, recommending permanent custody of the Children be granted to TCJFS.

{¶5} The trial court conducted a hearing on the motion on August 30, 2022. The following evidence was presented:

{¶6} Dr. Aimee Thomas, a licensed psychologist with Lighthouse Family Center, completed an assessment of Mother. Because Mother does not speak English, an interpreter was present during the assessment.[2] Mother discussed her schizophrenia

---

[2] Mother only speaks K'iche', a language native to Guatemala.

diagnosis with Dr. Thomas.    She reported she experiences audio and visual hallucinations, behaved liked a drunk person, and essentially shut down and could not function well in terms of taking care of herself and the Children.    At the time of the evaluation, Mother was receiving psychiatric services, but was not engaged in counseling. Mother discussed the reasons for TCJFS's involvement with the family.

{¶7}    Mother indicated she would not leave Father and expressed her belief TCJFS would not allow her to regain custody of the Children without him.    Mother also questioned her ability to care for the Children without Father.    Mother was reliant on Father for housing and financial support.    Mother admitted she would not leave the Children alone with Father due to concerns about his drinking and concerns he would not care for the Children.

{¶8}    Dr. Thomas administered the non-verbal portion of the Kaufman Brief Intelligence Test.    Mother scored a 50 on the intelligence test, which indicates she is on the lower extreme of intellectual ability.    Dr. Thomas explained Mother functions at the level of a 5-year-old in terms of problem solving.    Dr. Thomas also asked Mother questions posed on the structured clinical interview for DSM-5 disorders. Dr. Thomas noted gathering information from Mother during the interview was challenging.    Mother did not recall a lot of information.    Mother acknowledged tolerating an unhealthy relationship due, in part, to her inadequately addressed mental health diagnoses.    Mother provided consistent data relative to her diagnosis of schizophrenia.    Mother agreed with the diagnosis and Dr. Thomas found her description of her symptoms consistent with the disorder.

{¶9}    In addition to schizophrenia, Dr. Thomas diagnosed Mother with intellectual disabilities and dependent personality disorder.  Dr. Thomas testified individuals with dependent personality disorder are often unable to protect themselves and their children from violence in the home.  Dr. Thomas added Mother's intellectual disabilities would make it difficult to teach Mother parenting skills.  Mother's schizophrenia could interfere with her ability to attend to the Children, supervise them, and ensure their basic needs are met.  Dr. Thomas recommended Mother continue to take her psychotropic medication, participate in counseling, and develop a safety plan in the event violence occurs in the home.

{¶10}  Jennifer Fire, the supervisor of the Goodwill Parenting Program, testified Mother did not successfully complete the program.  Mother had perfect attendance. Mother did not verbally participate in class, but did have positive non-verbal skills.  Mother participated in visitation through Goodwill Parenting.  She was present for 11 of 12 visits. One of the Children was sick on the day of the 12th visit, but the Children and Mother visited by video.  Mother struggled to engage the Children both verbally and non-verbally during visits.  Mother interacted only minimally with the Children and spent much of the time looking around the room at other children or families. At times, Mother's body was positioned completely away from the Children.  Mother often did not greet the Children when visits began or say "good-bye" when visits ended. Mother did not follow through with redirection given the prior week.

{¶11}  Fire conducted a home visit on December 2, 2021.  The home needed a thorough cleaning, "the floors were exceptionally dirty, very sticky."  Transcript of Permanent Custody Hearing at 33.  Fire found the home infested with cockroaches, and

the insects were buried in the trim of the doors and windows. Fire noted a number of safety concerns including razors and knives within reach of the Children. Fire did not believe the home was an appropriate place for the Children to reside.

**{¶12}** Fire noted Mother was attentive in parenting class, was open to individual assistance, met with Goodwill instructors after class to work on her program goals, and took responsibility for her part in the removal of the Children. However, Mother was unable to retain and apply information, and visits remained challenging throughout the pendency of the case. Mother lacked insight into the potential long-term effects of exposing the Children to substance abuse and domestic violence. Mother also was unable to develop a plan of what she would do differently in the future.

**{¶13}** Malissa Cantarero, the on-going TCJFS caseworker assigned to the family, testified the instant matter is the second ongoing case with the family. Cantarero added there have been ten other reports involving the family over the years. All of those reports included domestic violence and substance abuse. The Children were removed in 2018, due to concerns of domestic violence, Mother's mental health and the fact she was unmedicated, and Father's substance abuse. The Children were in foster care from October 2, 2018, until July 14, 2019. Parents completed their case plan services and the case was closed on September 24, 2019.

**{¶14}** On August 19, 2020, TCJFS received a new report of emotional maltreatment and neglect. Mother had been hospitalized, stayed with her sister upon her discharge, then went to a domestic violence shelter. During the investigation, Mother advised TCJFS Father was drinking again, abusing her, and hiding her medication.

Services were put into place.  The case was eventually closed.  The Children were not removed from the home during the pendency of that case.

{¶15}  With respect to the instant case, Cantarero stated TCJFS received a report on January 5, 2021, indicating Mother and Father were involved in a physical altercation the previous weekend.  Father was drunk at the time of the incident.  Mother claimed Father was hiding her medication.  The Children were present and observed the altercation.  During the investigation, Father admitted to drinking, hitting Mother, and hiding Mother's medication.  The Children were removed on January 5, 2021, and TCJFS received temporary custody on January 6, 2021.

{¶16} Cantarero testified Mother's case plan required her to undergo a psychological evaluation at Lighthouse and complete Goodwill Parenting.  Mother completed her psychological evaluation.  Mother attended Goodwill Parenting, however, there were concerns regarding her completion.  Parents maintained stable housing during the course of the proceedings.  They moved to a new apartment in April, 2022.  The previous residence was dirty and cockroach infested.  The Children shared a bed with Parents.  Mother was compliant with consistently taking her medication.  Mother sees a psychiatrist on a monthly basis.  Mother does not show real affection to the Children during visits.  Mother did not say "good-bye" or tell the Children she loves them at the end of visits.

{¶17} Cantarero indicated the Children are doing well in foster care.  They have been in the same home since their removal.  Cantarero described the Children as caring, respectful, and well-behaved.  They are attached to their foster parents.  The Children are doing well in school.  Although unhappy TCJFS requested permanent custody, the

Children had accepted the decision and recognized such was in their best interest. The Children were acutely aware history would repeat itself.

{¶18} Cantarero expressed concerns over the Children being returned to Mother's care. Cantarero explained Mother's mental health cannot be remedied, and, even with medication, there are times when Mother is catatonic. Mother can barely take care of herself and, at times, is unable to control her bodily functions. Mother does not have the ability to recognize what is safe and unsafe for the Children. Cantarero believed Mother would never be able to care for the Children.

{¶19} The GAL, Attorney Donovan Hill, testified he concurred with the concerns raised by Dr. Thomas and Jennifer Fire. The GAL noted he was also the Guardian ad Litem during the 2018 case. The concerns which resulted in the removal of the Children in October, 2018, remained. Neither Mother nor Father had remedied those concerns. The GAL believed it was in the best interest of the Children to grant permanent custody to TCJFS.

{¶20} Via Judgment Entry filed September 3, 2022, the trial court terminated Mother and Father's parental rights and granted permanent custody of the Children to TCJFS. The trial court found Mother and Father "failed continually and repeatedly to substantially remedy the conditions causing removal." September 3, 2022 Judgment Entry at 6-7, unpaginated. The trial court further found the Children could not and should not be placed with either Mother or Father within a reasonable time and it was in the Children's best interest to grant permanent custody to TCJFS.

{¶21} It is from this judgment entry Mother appeals.

{¶22} In Tuscarawas App. Nos. 2022 AP 09 0031 and 2022 AP 09 0032, Mother raises the following identical assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT THE AWARD OF PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST.

{¶23} These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

TUSC. APP. NO. 2022 AP 09 0031

I

TUSC. APP. NO. 2022 AP 09 0032

I

{¶24} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶25}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶26}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶27}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d)is present before proceeding to a determination regarding the best interest of the child.

**{¶28}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not

be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶29} As set forth in our Statement of the Facts and Case, supra, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the Children from her home. Mother was diagnosed with schizophrenia, intellectual disabilities, and dependent personality disorder. Mother functions at the level of a 5-year-old for problem solving abilities. Mother's mental health cannot be remedied, and, even with medication, there are times when Mother is catatonic. Mother has difficulty taking care herself and is, sometimes, unable to control her bodily functions. Mother did not show real affection to the Children or engage with them during visits. Mother does not have the ability to recognize what is safe and unsafe for the Children. Mother will not leave Father who becomes violent when he drinks. Despite a diagnosis of alcohol dependency, Father admitted to drinking throughout the pendency of the case.

{¶30} The Children are doing well in foster care. They have been in the same home since their removal. The Children are described as caring, respectful, and well-behaved. They are attached to their foster parents. The Children are doing well in school. The Children were acutely aware history would repeat itself if they are returned to Mother.

{¶31} Based upon the foregoing, we find the trial court's finding the Children could not be placed with Mother within a reasonable period of time or should not be placed with

her is not against the manifest weight of the evidence. We further find the trial court's finding it was in the Children's best interests to grant permanent custody to TCJFS is not against the manifest weight of the evidence.

{¶32} Mother's assignments of error are overruled.

{¶33} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Wise, J. and

Baldwin, J. concur